## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1206 | **DATE** | 7/6/2004 |
| **CASE TITLE** | Utica Mutual Insurance vs. The David Agency Insurance | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

### DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants David's motion for partial judgment on the pleadings (7-10 and denies Utica's motion for judgment on the pleadings (9-1). The case is set for status hearing on 7/15/04 at 9:30 a.m. for the purpose of addressing what further proceedings will be required in this case.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 0 8 2004 | 15 |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | JXM | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | 2004 JUL -7 PM 2:58 | date mailed notice |
| | | Date/time received in Central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**JUL 0 8 2004**

| UTICA MUTUAL INSURANCE COMPANY, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 04 C 1206 |
| THE DAVID AGENCY INSURANCE, INC.; DAVID MEILAHN; and G.F. MANN AGENCY, LTD. Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Utica Mutual Insurance Company ("Utica") filed suit seeking a declaratory judgment that it is not obligated to indemnify its insured, the David Agency Insurance, Inc. and David Meilahn (collectively "David"), for a judgment entered against them in favor of G.F. Mann Agency, Ltd. on January 14, 2004. David has moved for partial judgment on the pleadings. It argues that Utica breached its duty to defend by not effectively reserving its rights prior to defending David in the Mann lawsuit and therefore should be estopped from asserting coverage defenses and be held responsible for the full amount of the judgment. Utica has likewise moved for judgment on the pleadings, saying that it had no duty to defend and now has no duty to indemnify David. For the reasons stated below, the Court denies Utica's motion for judgment on the pleadings and grants David's motion for partial judgment on the pleadings.

### Background

The Amended Complaint in the Mann lawsuit contained five claims against The David

1



Agency Insurance, Inc. and David Meilahn, owner and operator of the company. Count 1 alleged violations of the Illinois Consumer Fraud Act, including solicitation of sales and contracts "by deceit, fabrication and false statements." Counterclaim at Ex. A, ¶¶ 17-18. Count 2 alleged defamation for statements made by David that were "false and known to be false at all relevant times . . . ." *Id.* ¶ 27. Count 3 alleged that David violated the Illinois Trade Secrets Act "with the knowledge that [the confidential] information was acquired by improper means." *Id.* ¶¶ 38-39. Count 4 alleged tortious interference with prospective economic advantage, and finally, Count 5 alleged violation of the Illinois Uniform Deceptive Trade Practice Act for solicitation of customers by making false and misleading statements about Mann's business. *Id.* ¶¶ 44, 48-49. Mann sought significant compensatory damages on each claim and punitive damages on Count 1, 2 and 3. *Id.* at 6, 8, 10-12. Notably, Count 2, the defamation claim, included the largest prayer for damages, seeking $500,000 in compensatory damages and $500,000 in punitive damages. *Id.* ¶¶ 29-30.

Utica sent a letter to David on September 8, 2000 stating that it had retained counsel to defend David in the Mann lawsuit but was doing so under a full reservation of its rights. Utica Mot., Ex. 1(C). Utica's reason for reserving its rights was that "[t]he Complaint alleges intentional acts and violation of the Consumer Fraud Deceptive Practices Act." *Id.* Further, Utica noted several exclusions in David's policy that "may apply in this instance" and stated that "if the allegations of this suit are proven, there would be no coverage." *Id.* Utica also said the complaint was seeking punitive damages "which are not insurable under this policy." *Id.* Utica listed the name and contact information for the law firm it had selected to represent David and also stated, "[y]ou may, at your own expense, hire a personal attorney to protect you for the

punitive damages or any uncovered portions of this policy." *Id.*

David seeks to be indemnified under the insurance policy for liability arising from "personal injury" and "advertising injury." "Personal injury" is defined in the policy as that "caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you." Counterclaim, Ex. B, ¶ A.1.b.2.a. "[A]dvertising injury" is defined as that "caused by an offense committed in the course of advertising your goods, products or services." *Id.* ¶ A.1.b.2.b.

The policy also states under the heading "Liability and Medical Expense Definitions" that both "personal injury" and "advertising injury" may arise from one or more of the following offenses:

> (1) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services or (2) Oral or written publication of material that violates a person's right of privacy.

*Id.* ¶ F.13.d-e; F.1.a-c. The policy excludes coverage for injuries:

> (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with *knowledge of its falsity* and (2) [a]rising out of the willful violation of a penal statue or ordinance committed by or with the consent of the insured.

*Id.* ¶ B.1, p.1, 3 (emphasis added).

Judgment was entered against David on January 14, 2004 for $987,087.02, including $462,087.02 in compensatory damages and $525,000 in punitive damages. David seeks to be reimbursed for the entire judgment, as well as for the attorney's fees it incurred following the entry of the judgment and that they will incur on appeal. David also seeks an order directing Utica to post the policy in lieu of a bond in connection with the appeal.

3

David argues that Utica had a duty to defend under the policy because the allegations in the Mann lawsuit made David potentially liable for acts covered as personal injury and advertising injury. David contends that Utica created a conflict of interest by reserving its right to deny coverage. David also contends that Utica's reservation of rights letter was ineffective because it failed to disclose the conflict of interest and misinformed David that it would have to pay for the cost of retaining independent counsel. David says it was prejudiced because Utica did not disclose that the defense of their case could affect coverage under the policy. For these reasons, David argues that Utica is estopped from using coverage defenses to the claim for indemnification.

Utica states that it was not required under the policy to defend David and that it is not now required to indemnify David for the Mann judgment. Utica says it properly reserved its rights because it specifically referred to the policy defenses it now asserts against David's claim for indemnification. It says the allegations in the Mann lawsuit were based solely on intentional acts which were excluded from coverage under the insurance policy.

Both sides have moved for judgment on the pleadings.

Discussion

Judgment on the pleadings is proper where the pleadings raise only questions of law and no questions of material fact. *Alexander v. City of Chicago*, 994 F.2d 333, 335 (7th Cir. 1993). *See also Conley v. Team Info Age*, No. 03 C 0639, 2004 WL 528004, *1 (N.D. Ill. Jan. 27, 2004). Both sides agree on the material facts and raise only issues of law as to Utica's duty to defend and indemnify David. The parties agree that Illinois law applies.

David argues that if the Court rejects its contention that Utica is estopped from asserting

policy defenses, then judgment on the pleadings in Utica's favor on the duty to indemnify is inappropriate because fact issues remain. Because the Court concludes that Utica is estopped, we need not address David's argument.

## 1. Utica had a duty to defend David

It is well-settled that an "insurer's duty to defend its insured is much broader than its duty to indemnify." *Outboard Marine Corp. v. Liberty Mutual Ins.*, 154 Ill. 2d 90, 125, 607 N.E.2d 1204, 1220 (1992). To determine whether an insurer has a duty to defend, a court must compare the allegations of the underlying complaint to the language of the insurance policy. *Id.* The court must construe the allegations in the underlying complaint liberally in favor of the insured, especially with regard to exclusionary clauses, to determine if the allegations fall within, or potentially fall within, the scope of coverage under the policy. *Id.*, at 125, 607 N.E.2d at 1220. "Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage." *Id.* at 108, 607 N.E.2d at 1212. The insurer has an obligation to defend if any part of the underlying lawsuit could require it to indemnify the insured, even if the complaint alleges several causes of action and only one of those may be covered. *Md. Casualty Co. v. Peppers*, 64 Ill. 2d 187, 194, 355 N.E.2d 24, 28 (1976). *See also Curtis-Universal, Inc. v. Sheboygan Emergency Med. Serv.*, 43 F.3d 1119, 1122 (7th Cir. 1994).

Among the claims made against David in the Mann lawsuit was a claim for defamation. A defamation claim requires proof that the defendant made a false statement, but it does not require that the defendant knew of the statement's falsity. *Krasinski v. United Parcel Service*, 124 Ill. 2d 483, 490, 530 N.E.2d 468, 471 (1988). Furthermore, for a duty to defend to exist, the

5

allegations in the underlying complaint do not have to use language that specifically would bring the claims under coverage of the policy. *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001) (applying Illinois law). In *Cincinnati*, the court held that an insurer had a duty to defend its insureds under a policy that provided coverage for "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." *Id.* at 744. The allegations against the insureds could give rise to liability for defamation, but the underlying complaint alleged only intentional misconduct, which was excluded under the insurance policy. *Id.* 746-47. The court noted that the allegations of "deliberate misconduct" were "much more likely to have been intended as a pitch for punitive damages than as a limitation of the claim . . . ." *Id.* at 746. The insurer owed its insured a duty to defend because the insured could have been found liable for defamation based on negligence. *Id.*

The same is true in this case. Count 2 of the Mann amended complaint alleged defamation for false statements made with knowledge of their falsity. But as in *Cincinnati*, David could have been found liable for defamation under Count 2 without a finding that they knew the statements were false. The policy provision regarding slander, libel, and disparagement is identical to one in *Cincinnati*. As in *Cincinnati*, the Mann complaint contained a claim that fell within the scope of coverage under the policy. Utica had a duty to defend.

Utica's comparison of the instant case to *United Fire & Casualty Co. v. Jim Maloof Realty, Inc.* is unavailing. 105 Ill. App. 3d 1048, 1050, 435 N.E.2d 496, 498-99 (1982). In *United Fire*, an insurer was held to have no obligation to defend its insured because the underlying complaint alleged acts giving rise to potential liability only for intentional fraud, which was specifically excluded from coverage. *Id.* at 1050, 435 N.E.2d at 498-99. The same is

6

not true in this case; David could have been found liable for defamation based on negligence and without any proof of intent. Thus, construing the allegations of the underlying complaint in the light most favorable to the insured, the Mann lawsuit triggered Utica's duty to defend David.

## 2. Utica is estopped from asserting coverage defenses

The Illinois Supreme Court has stated that an insurer has two options when it believes that the liability from a claim against its insured will not be covered by its insurance policy: (1) defend the lawsuit under a proper reservation of rights, or (2) secure a declaratory judgment about its obligations under the policy prior to trial. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150, 708 N.E.2d 1122, 1134-35 (1999); *Royal Ins. Co. v. Process Design Assoc., Inc.*, 221 Ill. App. 3d 966, 973, 582 N.E.2d 1239 (1991). If the insurer fails to take either of these actions, an estoppel is created which "bar[s] the insurer from raising policy defenses to coverage, even those defenses that may have been successful had the insurer not breached its duty to defend." *Employers Ins.*, 186 Ill. 2d at 152, 708 N.E.2d at 1135. The estoppel doctrine arose out of a "recognition that an insurer's duty to defend . . . [the insured] . . . is so fundamental an obligation that a breach of that duty constitutes a repudiation of the [insurance] contract." *Id.* at 151, 708 N.E.2d at 1135.

To invoke the estoppel doctrine, the insured has the burden of showing that it has suffered prejudice from the insurer's provided defense. *Md. Casualty*, 64 Ill. 2d at 196, 355 N.E.2d at 29. The requisite showing can be made if the insured establishes that a conflict of interests existed and that the insurer defended him without first properly reserving its rights by making specific reference to the conflict in its reservation of rights. *Doe v. Ill. State Med. Inter-Ins. Exch.*, 234 Ill. App. 3d 129, 134, 599 N.E.2d 983, 986-87 (1992).

7

Under Illinois law, a serious conflict of interest exists between the insurer and the insured if they "'were complete adversaries on a crucial issue which would necessarily be decided either one way or the other if liability [were] imposed.'" *Amec Constr. Mgmt. v. Regent Ins. Co.*, No. 03 C 2880, 2004 WL 816720, *3 (N.D. Ill. Mar. 11, 2004) (quoting *Maneikis v. St. Paul Ins. Co. of Ill.*, 655 F. 2d 818, 825 (7th Cir. 1981)). To determine if there is a conflict of interest, we compare the allegations in the underlying lawsuit to the terms of the insurance policy to assess whether the insurer would benefit by "providing a less than vigorous defense to those allegations." *Royal*, 221 Ill. App. 3d at 975-76, 978, 582 N.E.2d at 1240, 1242.

In *Royal*, the Court held that an insurer created a conflict in interest when it undertook to defend the insured, while attempting to show that the insured was liable for professional negligence that would not be covered under the policy. *Id.* at 975-76, 978, 582 N.E.2d at 1240, 1242. Similarly, in *Maryland Casualty*, the court found that an insured's defense by an insurer's appointed counsel raised a serious ethical conflict of interest between the insurer and the insured. *Md. Casualty Co.*, 64 Ill. 2d at 198, 355 N.E.2d at 31. The court noted that it was in the best interest of the insured, though not that of the insurer, to argue that the insured acted negligently rather than intentionally, because coverage under the insurance policy depended on this determination. *Id.* at 198, 355 N.E.2d at 31.

The same is true here; Utica's interest would be furthered if David were shown to have intentionally defamed Mann, whereas David's interest, short of winning the case, was to show it acted only negligently. Were David successful in limiting the fact finder to a finding of negligence, its liability for defamation would be covered by insurance, and it would escape liability for punitive damages.

8

Under Illinois law, punitive damages may be awarded only for acts that are "malicious or display reckless disregard for another's rights" or are done in "aggravated circumstances, such as fraud, willfulness, wantonness, or malice." *Petty v. Chrysler Corp.*, 343 Ill. App. 3d 815, 828, 799 N.E.2d 432, 443-44 (2003). Because Illinois public policy prohibits insuring against liability for punitive damages arising out of an insured's misconduct, see, e.g., *Crawford Lab., Inc. v. St. Paul Ins. Co. of Ill.*, 306 Ill. App. 3d 538, 544, 715 N.E.2d 653, 659 (1999); *Beaver v. Country Mutual Ins. Co.*, 95 Ill. App. 3d 1122, 1125, 420 N.E.2d 1058, 1061 (1981), David would be on the hook if found to have acted intentionally and Utica would be off the hook.

The law regarding punitive damages may give rise to a conflict when the insurer and insured have differing levels of motivation in defending a suit that requests large punitive damages. *Nandorf, Inc. v. CNA Ins. Cos.*, 134 Ill. App. 3d 134, 139, 479 N.E.2d 988, 992 (1985). In *Nandorf*, an insurer and its insured were found to have unequal interests in vigorously defending a claim for a covered amount of $5,000 in compensatory damages, and for punitive damages of $100,000, an award of which would have no economic consequence for the insurer. *Id.* at 138, 479 N.E.2d at 992. The court noted that although the insurer's attorney owed the insured ethical and professional duties, "in reality, [he] may have closer ties with the insurer and a more compelling interest in protecting the insurer's position . . . ." *Id.* at 138, 479 N.E.2d at 991 (quoting *Purdy v. Pac. Auto. Ins. Co.*, 157 Cal. App. 3d 59, 76, 203 Cal. Rptr. 524, 534 (1984)).

A similar conflict of interest existed between Utica and David. Count 2, the defamation claim, requested the largest amount of damages, $500,000 in compensatory damages and $500,000 for punitive damages. It was in David's interest to argue that it did not know of the

9

falsity of the alleged statements; if David succeeded, its liability for defamation and any resulting damage award would be covered under the insurance policy. By contrast, Utica had no interest in trying to show David's lack of knowledge. Were the fact finder to hold David for intentional defamation, Utica would escape liability for any compensatory damage award. Furthermore, Utica had no interest in trying to show David's lack of knowledge to prevent a punitive damage award.

If a conflict of interest exists, the insurer ordinarily must pay the costs of independent counsel "instead of participating in the defense itself." *Murphy v. Urso*, 88 Ill. 2d 444, 451-52, 430 N.E.2d 1079, 1082 (1981). *See also Pepper Const. Co. v. Casualty Ins. Co.*, 145 Ill. App. 3d 516, 518, 495 N.E.2d 1183, 1184 (1986) (holding that the insurer should not "even be permitted to participate in the defense of the case; in such an instance, its obligation to provide a defense is satisfied by reimbursing the insured for the costs of the defense.") *See also Ins. Co. of the State of Pa. v. Protective Ins. Co.*, 227 Ill. App. 3d 360, 368-69, 592 N.E.2d 117, 122 (1992). *See also Amec Constr. Mgmt. v. Regent Ins. Co.*, No. 03 C 2880, 2004 WL 816720, *3 (N.D. Ill. Mar. 11, 2004) (holding that an insurer must allow the insured to select its own counsel and reimburse the insured for those costs because a "serious conflict" of interest existed).

If a conflict of interest exists and the insured nonetheless chooses to defend the insured, the insurer must do so under a proper reservation of rights or risk being estopped from raising coverage defenses. *Royal*, 221 Ill. App. 3d at 975, 582 N.E.2d at 1240 (noting that "an insurer is generally estopped to assert a defense of noncoverage where the insurer undertakes to defend its insured in the underlying suit without reserving its rights.") *See also Doe*, 234 Ill. App. 3d at 134, 599 N.E.2d at 986. A proper reservation of rights is one that allows the insured to choose

10

intelligently between accepting the insurer's defense counsel and retaining his own counsel. *Royal*, 221 Ill. App. 3d at 973, 582 N.E.2d at 1239.

If the insurer proceeds to defend the insured in the face of a conflict of interest, it must reserve its rights in a manner that will "*fairly* inform the insured of the insurer's position." *Cowan v. Ins. Co. of N. America*, 22 Ill. App. 3d 883, 892, 318 N.E.2d 315, 322-23 (1974) (emphasis added). In informing the insured of the conflict, "the insurer must act openly and with the utmost loyalty to its insured both in initially explaining the insurer's position in the matter and in the actual defense of the tort litigation." *Id.* at 896, 318 N.E.2d at 326. "[B]are notice of a reservation of rights is insufficient unless it makes specific reference to the policy defense which may ultimately be asserted *and* to the potential conflict of interest." *Id.* (emphasis added). *See also Royal*, 221 Ill. App. 3d at 973, 582 N.E.2d at 1239; *Doe*, 234 Ill. App. 3d at 134, 599 N.E.2d at 987.

In *Mobil Oil Corp. v. Md. Casualty Corp.*, the insured was held to be estopped from denying coverage after it failed to make specific reference to a potential conflict of interest in its initial reservation of rights letter to its insured. 288 Ill. App. 3d 743, 681 N.E.2d 552 (1997). The insurer Maryland waited until the middle of pre-trial litigation to disclose an amendment to its policy limits that would greatly increase the insured's exposure if the case went to trial rather than settling out of court. *Id.* at 754, 681 N.E.2d at 560. "By failing to inform [the insured] promptly of the potential coverage dispute, Maryland deprived Mobil of the opportunity to obtain its own counsel at the outset of the litigation and avoid the potential conflict of interest." *Id.* at 755, 681 N.E.2d at 560.

11

Similarly, in *Royal*, an insurer was estopped from raising coverage defenses because it did not properly reserve its rights. The insurer, Royal, failed to inform its insured, Process, of all the defenses it was reserving and did not disclose a conflict of interest, in that Royal would benefit from a finding that Process was professionally negligent and therefore not covered under the policy. *Royal*, 221 Ill. App. 3d at 978-79, 582 N.E.2d at 1242, 1244. The court held that Royal's letter reserving its right was inadequate because, in using the words "may" and "possibly," it did not advise Process "unequivocally and clearly" of its intention to reserve a particular defense. *Id.* 221 Ill. App. 3d at 974, 582 N.E.2d at 1239. The court further found that the attorney appointed by Royal to defend Process was "at cross-purposes" with Process and that the defense was "tainted by the benefit Royal would derive from a finding that Process was professionally negligent," a result that would increase Process's exposure to uncovered liability. *Id.* at 977, 582 N.E.2d at 1242.

The Illinois Supreme Court, in *Maryland Casualty*, also recognized that a conflict of interest raises concerns about the ethical representation of the insured by the insurer and its attorney. *Md. Casualty*, 64 Ill. 2d at 197-98, 355 N.E.2d at 30. Referring to the Illinois Code of Professional Responsibility, the court held that "serious ethical questions prohibit an attorney from representing both the interest" of the insurer and insured. *Id.* at 198, 355 N.E.2d at 31. The court further noted that the conflict of interest would not be resolved unless the insured was willing to accept the insurer's counsel after a full disclosure of the conflict of interest. *Id.* Without a full disclosure and acceptance, the conflict of interest may only be resolved by the insurer allowing the insured to select his own attorney to control his case and by reimbursing the insured for the costs of that independent defense. *Id.* at 198-99, 355 N.E.2d at 31.

Relying on *Maryland Casualty*, the court in *Allstate Ins. Co. v. Carioto* held that a detailed disclosure letter to the insured regarding conflicts of interest was sufficient to inform the insured of his rights to a fair defense. 194 Ill. App. 3d 767, 777, 551 N.E.2d 382, 387 (1990). In *Allstate*, a law firm regularly employed by Allstate, the insurer, was selected by Allstate to be counsel for Carioto, the insured. *Id.* at 777, 551 N.E.2d at 387. The firm sent Carioto a three-page letter that disclosed that the firm was being paid by Allstate and that a conflict of interest would arise if it undertook the insured's defense. *Id.* The letter, which Carioto signed and returned, specifically mentioned that "it would be in Allstate's interest to have a determination that Carioto intentionally injured Evans and that Carioto was free to select his own attorney at Allstate's expense." *Id.* The court held that Allstate was not estopped from raising coverage defenses because Allstate's disclosures were adequate under the principles laid out in *Maryland Casualty*. *Id.* at 777, 551 N.E.2d at 387. The court expressed its strong disapproval, however, that the letter to Carioto did not disclose that the law firm was regularly employed by Allstate, another potential source of conflict of interest. *Id.* at 777-78, 551 N.E.2d at 388.

In the instant case, as we have noted, a conflict of interest existed between Utica and David. Utica's reservation of rights letter identified the policy defenses Utica might assert, but it did not adequately disclose the conflict of interest. For this reason, the Court holds that Utica is estopped from raising coverage defenses regarding the Mann judgment.

When a conflict of interest exists, a reservation of rights is proper only if it informs the insured about the conflict in a way that permits the insured to make an intelligent choice to accept the insurer's attorney or retain his own. Utica's bare notice that intentional actions and punitive damages were not covered by the policy and that Utica reserved its right to deny

13

coverage did nothing to inform David of the conflict of interest related to the defense of the case, particularly as to the defamation claim. Indeed, the letter makes no mention at all of the ways in which Utica's interest might affect or impair its defense of David on that claim.

Utica's statement that David "may, at your own expense, hire a personal attorney" to protect against uncovered losses likewise failed to satisfy the requirements for a proper reservation of rights. Under the law, the insurer must pay for the defense of an insured who determines in a conflict of interest situation not to be represented by the insurer's chosen attorney. *See Md. Casualty*, 64 Ill. 2d at 198-99, 355 N.E.2d at 31; *Murphy*, 88 Ill. 2d at 451-52, 430 N.E.2d at 1082. Although we have found no case specifically requiring an insurer to disclose that it will pay for the insured's counsel in that situation, Utica did not merely fail to disclose this information but instead made an erroneous disclosure the likely effect of which was to discourage David from the option of seeking non-conflicted representation.

The Court, like the court in *Allstate v. Carioto*, also has concerns about Utica's failure to inform David about the prior and long-standing relationship between Utica and the law firm it chose. Even if this might not be a reason by itself to find Utica's reservation of rights inadequate, it is a factor properly considered in conjunction with the other deficiencies previously discussed.

Based on Utica's inadequate reservation of its rights, David was denied the disclosures necessary to make an informed decision about retaining its own attorney and was induced into accepting Utica's appointed counsel. As in *Mobil Oil*, David was not informed that a conflict of interest risked greatly increasing its exposure. As a result of its inadequate disclosures, Utica breached its "fundamental" duty to defend David. And under Illinois law, Utica's defense of

14

David without a proper reservation of rights suffices to establish the requisite prejudice. The Court therefore holds that Utica is estopped from asserting its policy defenses against its insureds.

## Conclusion

For the reasons stated above, the Court grants David's motion for partial judgment on the pleadings [docket # 7-1] and denies Utica's motion for judgment on the pleadings [# 9-1]. The case is set for a status hearing on July 15, 2004 at 9:30 a.m. for the purpose of addressing what further proceedings will be required in this case.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 6, 2004